LUE BIRDIE ROSS, Plaintiff, *v.* EDWARD S. CORTES, Defendant.—(DALE ROSS, Plaintiff-Appellant, *v.* EDWARD CORTES *et al.*, Defendants-Appellees.)

First District (1st Division)    No. 80-1658

Opinion filed May 4, 1981.

Van Emden, Busch & Van Emden, of Chicago (George J. Van Emden, of counsel), for appellant.

Law Office of Tim J. Harrington, of Chicago (Stewart M. Zelmar, of counsel), for appellee Edward S. Cortes.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

The single issue involved in this motor vehicle accident case is the amount of the verdict returned by the jury for property damage. Lue Birdie Ross filed a complaint against Edward Cortes for personal injuries

resulting from an automobile collision. Dale Ross (plaintiff) brought action against Edward Cortes and Sylvester Cortes for damage to plaintiff's automobile. The cases were consolidated. Defendants filed counterclaims. The jury returned a verdict of $4600 in favor of Lue Birdie Ross and in her favor of the counterclaim. By special interrogatories Lue Birdie Ross was found not guilty of contributory negligence and Edward Cortes was found guilty of contributory negligence. The jury also found in favor of plaintiff and against defendant Edward Cortes for $165 for property damage. Plaintiff appeals.

In this court, plaintiff takes the position the evidence shows definitely the actual amount of property damage so that the verdict is grossly insufficient. Defendant responds evidence of payment by plaintiff of the purported repair bill was hearsay and thus the amount of the verdict was proper.

On direct examination plaintiff identified four photographs as accurately representing the condition of his automobile after the occurrence. The photographs were received in evidence without objection. Plaintiff also testified his car was taken to 1000 South Wabash to "Auto and repair." Plaintiff identified certain bills issued by "One Thousand Auto Rebuilders, Inc." as reflecting the repair to his car and cost of tires from Acorn Tire Co. The total of these bills was $3566.64.

Plaintiff testified these bills arose out of this accident and reflect the damage to plaintiff's car. Plaintiff testified the bills were paid. The bills were offered in evidence. Counsel for defendant objected. On cross-examination, counsel for defendant asked the witness if there was anything on the bills such as a stamp to indicate payment. The witness answered "No, but I know it's been paid, even if it is not stamped on there." The cross-examiner then asked the witness, "How do you know it's been paid?" The witness responded that when they (apparently the repair people) called him to come pick up his car they told him "to bring $165 and the insurance would pay the rest of it." Plaintiff testified he picked up his car, paid $165 and brought it home.

An objection was made by defendants to receiving the bills in evidence. The objection was on the stated ground that there was no stamp evidencing payment of the bills on the face thereof so that the evidence of payment was hearsay. The trial court overruled the objection and the bills were received in evidence.

In *Smith v. Champaign-Urbana City Lines, Inc.* (1969), 116 Ill. App. 2d 289, 291, 252 N.E.2d 381, this court held:

> "It has been the long-followed rule in Illinois that a paid automobile repair bill is admissible in evidence without other foundation as prima facie evidence of the necessity and reasonableness of such repairs. [Citations.]"

The same reasoning was applied in *Saunders v. Wilson* (1969), 114 Ill. App. 2d 380, 253 N.E.2d 89. In that case this court held the stamp or other manifestation on the face of a repair bill is not the material point because the bill itself does not provide the proof. This court referred to the critical matter as follows (114 Ill. App. 2d 380, 382-83):

"It is the uncontroverted testimony of the plaintiff under oath that the repairs were necessitated by the accident, that the repairman was in the business of making such repairs, and that he paid the bill. Such a transaction is not suspect. It has long been the law in this jurisdiction that once a proper foundation has been laid, a paid repair bill is admissible. [Citations.] Testimony as to the fact of payment is also admissible. [Citation.] No case has been brought to our attention in which it has been held that oral evidence supporting the bona fides of such a bill is inadequate in the absence of a notation of payment on the bill."

An interesting sidelight upon this situation appears from *Flynn v. Cusentino* (1978), 59 Ill. App. 3d 262, 375 N.E.2d 433, *appeal denied* (1978), 71 Ill. 2d 608. This court held the same reasoning applies to hospital bills, and even to doctor bills on the theory that payment of this type of bill is prima facie evidence the bill was reasonable and the crucial matter is the testimony the bill has been paid. The court added any contrary rule would cause unnecessary inconvenience to doctors, hospital personnel and the public. The same principle is set out in *Millburn Mutual Insurance Co. v. Glaze* (1980), 86 Ill. App. 3d 1055, 1061, 410 N.E.2d 295, and cases there cited.

In the case before us the reference by plaintiff to payment of the bill by the insurance company was brought out, apparently inadvertently, by defendant in cross-examination. In our opinion, as shown by the above authorities, payment of the bill is the critical testimony.

■■■ In addition, we do not believe the testimony plaintiff paid the bill is hearsay. This evidence involves only a description of a physical act and should not be classified as hearsay. In addition, where the bill was paid by insurance or from any other source is immaterial as plaintiff could properly recover the entire amount of damages under the collateral source rule. (See *Smith v. General Casualty Co.* (1979), 75 Ill. App. 3d 971, 974, 394 N.E.2d 804; *Biehler v. White Metal Rolling & Stamping Corp.* (1975), 30 Ill. App. 3d 435, 444, 333 N.E.2d 716.) Viewed in the context of the record before us, in the absence of evidence to the contrary, plaintiff's testimony of payment of the above amount stands unassailed.

■■ These principles cannot be reconciled with the verdict of the jury which disregarded the evidence of payment of the correct sum and instead returned a verdict for $165. Defendant urges the amount of a verdict is discretionary with the jury and may not be interfered with by

the court. However, the authorities cited by defendant are concerned with the ascertainment of damages which rest peculiarly within the discretion of the jury. (*DMI, Inc. v. Country Mutual Insurance Co.* (1980), 82 Ill. App. 3d 113, 115, 402 N.E.2d 805 (involving a premature action for indemnity prior to judgment on the underlying claim); *Kitsch v. Goode* (1977), 48 Ill. App. 3d 260, 269, 362 N.E.2d 446 (involving the traditional type of damages for personal injuries); and *Long v. Duggan-Karasik Construction Co.* (1974), 23 Ill. App. 3d 812, 832-33, 320 N.E.2d 553, *appeal denied* (1975), 58 Ill. 2d 594 (also involving personal injuries).) The case before us is entirely different and involves a fixed and liquidated amount. Plaintiff thus contends the device of additur should properly be used here. Defendant objects.

Our review of the authorities on additur shows these cases to be material in varying degrees:

In *Carr v. Miner* (1866), 42 Ill. 179, in a contractual action, the jury allowed interest at 5 percent per annum. It seems clear that interest should have been allowed at 10 percent. The trial judge "intimated" he would grant a new trial unless defendant agreed to increase the verdict to bring the amount up to 10 percent. The defendant agreed to this procedure and the motion for a new trial was overruled. The supreme court characterized the case as one "in which the amount could be calculated with certainty when the basis was found." (42 Ill. 179, 192.) At this point the court also stated, "[t]he practice is one that should be sparingly indulged, and should never be adopted except in clear cases." 42 Ill. 179, 192.

In *James v. Morey* (1867), 44 Ill. 352, in an action involving recovery of rent, the jury returned a verdict for $26.48. The trial court decided plaintiff's motion for new trial would be allowed unless defendant consented that the verdict be increased to $144.54. It appears this was "the amount due by the lease." (44 Ill. 352, 354.) The defendant agreed to this increase. The supreme court affirmed this action on the authority of *Carr*.

In *Dimick v. Schiedt* (1935), 293 U.S. 474, 79, L. Ed. 603, 55 S. Ct. 296, in an action involving damages for personal injury, the verdict was for $500. Plaintiff moved for a new trial. The trial court ordered a new trial unless defendant would consent to a verdict increase of $1500. Defendant agreed, and the motion for a new trial was denied. Plaintiff appealed. The trial court had never asked for plaintiff's consent. The court of appeals reversed the judgment on the ground that this "order violated the Seventh Amendment of the Federal Constitution in respect of the right of trial by jury." (293 U.S. 474, 476, 79 L. Ed. 603, 605, 55 S. Ct. 296.) The Supreme Court also pointed out that a decrease in the amount of damages (by remittitur) was the established rule of the common law but that an increase of the amount of damages (additur) was not established practice or the rule of the common law as it existed in

England at the time of the American Constitution. (See 293 U.S. 474, 482, 79 L. Ed. 603, 609, 55 S. Ct. 296, 299.) There is a strong and well-reasoned dissenting opinion by Mr. Justice Stone.

For purposes of the case before us it is necessary to note that *Dimick* involved unliquidated damages for personal injuries. On the contrary, the instant case involves damages which the evidence shows to be exact and definite and not subject to difference of opinion with reference to the amount involved.

In *Hong v. Williams* (1955), 6 Ill. App. 2d 456, 128 N.E.2d 655, this court dealt with a case involving recovery of unliquidated damages for personal injuries. The jury returned a verdict in favor of Hong for $1000. The evidence showed a verdict far in excess of $1000 would not be deemed excessive. This court held the trial court had no authority to impose an additur but that the trial court granted a new trial on the ground that the damages awarded were against the manifest weight of the evidence.

Here again in the case before us it appears that *Hong* dealt with unliquidated damages for personal injuries whereas the instant case involves a definitely calculable item. The distinction was clearly pointed out by this court (*Hong*, 6 Ill. App. 2d 456, 460):

> "A trial judge in a tort action for the recovery of unliquidated damages is without power to enlarge the verdict of a jury by an arbitrary additur. The device seems to be limited to cases where the inadequacy of the verdict is due to the omission of some specific, definitely calculable item."

In *Jehl v. Southern Pacific Co.* (1967), 66 Cal. 2d 821, 427 P.2d 988, 59 Cal. Rptr. 276, a personal injury case brought under the Federal Employers' Liability Act, the jury returned a verdict of $100,000. The trial court allowed plaintiff's motion for new trial on the issue of damages only. The California Supreme Court affirmed the order appealed from unless the trial court should order an additur within 30 days which defendant should be obliged to accept or reject. The court noted that use of the additur "will help implement this state's strong interest in the fair and efficient administration of a voluminous amount of litigation." (66 Cal. 2d 821, 835, 427 P. 2d 988, 997, 59 Cal. Rptr. 276, 285.) We need not deal with or consider the application of *Jehl* to the case before us. *Jehl* is differentiated because it involves unliquidated damages for personal injuries.

We also find the word "additur" described by this court in *Bernesak v. Catholic Bishop* (1980), 87 Ill. App. 3d 681, 409 N.E.2d 287, in a case involving unliquidated damages for personal injuries. This court held (87 Ill. App. 3d 681, 691-92):

> "We decline to accept plaintiff's computations with respect to either element of lost income as a basis for entering an additur, a

device which may be applied, if at all, to cases in which the inadequacy of the verdict is due to the omission of a specific, liquidated form of damages (*Carr v. Miner* * * *, 42 Ill. 179; *James v. Morey* * * *, 44 Ill. 352), rather than unliquidated tort damages of the character here presented. *Hong v. Williams* * * *, 6 Ill. App. 2d 456, * * *."

An excellent review of these pertinent cases appears in the article *Additur—Procedural Boon or Constitutional Calamity* written by Jeffrey Cole, 17 DePaul L. Rev. 175 (1967). Generally, the author points out that the only objection to additur is the possibility that it may result in a deprivation of the right to trial by jury. The article sets out a practical reason for the use of additur in situations involving definitely calculable amounts of damages in this language (17 DePaul L. Rev. 175, 193):

"The efficacy of remittitur in promoting the fair and efficient administration of justice without detracting from the substance of the right to trial by jury is no longer seriously questioned. In light of the arguments adduced earlier, it is difficult to fathom why additur would not be an equally salutory [*sic*] device. The demands of a fair and efficient administration of justice must be considered in the context of the pressures placed upon the judicial machinery by the incessant rise in the number of civil cases filed each year. The social and economic costs of overcrowded court dockets increase in geometric proportions to this annual rise. The situation is rapidly becoming critical and solutions such as additur must be speedily employed."

In our opinion the case before us presents a situation in which the additur qualifies as a workable device to bring the within litigation to a speedy end. It is necessary only that we once more restate the language used in *Hong* that the additur should be "limited to cases where the inadequacy of the verdict is due to the omission of some specific definitely calculable item." (6 Ill. App. 2d 456, 460.) In the instant case the verdict of $165 for property damage was definitely the wrong amount and the evidence shows without contradiction, as above indicated, that the correct amount was $3566.64. The amount of $165 appears to limit plaintiff's recovery to the exact amount which he personally paid.

In view of the specific evidence before us, we believe no reasonable person could disagree with the accuracy of the sum of $3566.64 as damages. The use of additur therefore allows us to expedite this cause without entering a remand for disposition of this relatively simple matter. The thought of needlessly prolonging this litigation through a remand reminds us of the following fable by Ambrose Bierce (Collected Writings of Ambrose Bierce 559 (Citadel Press ed. 1970)), as quoted in footnote 1 of *Ramos v. Matson Navigation Co.* (9th Cir. 1963), 316 F.2d 128, 132-33:

" 'THE PARTY OVER THERE

A Man in a Hurry, whose watch was at his lawyer's, asked a Grave Person the time of day.

"I heard you ask that Party Over There the same question," said the Grave Person. "What answer did he give you?"

"He said it was about three o'clock," replied the Man in a Hurry; "but he did not look at his watch, and as the sun is nearly down I think it is later."

"The fact that the sun is nearly down," the Grave Person said, " is immaterial, but the fact that he did not consult his timepiece and make answer after due deliberation and consideration is fatal. The answer given," continued the Grave Person, consulting his own timepiece, "is of no effect, invalid and void."

"What, then," said the Man in a Hurry, eagerly, "is the time of day?" "The question is remanded to the Party Over There for a new answer," replied the Grave Person, returning his watch to his pocket and moving away with great dignity.

He was a Judge of an Appellate Court.' "

Accordingly, we order that there shall be in this case an additur in the amount of $3401.64 to raise the verdict to $3566.64. If defendants Edward Cortes and Sylvester Cortes file in this court on or before 30 days from the date of filing of his opinion an additur in said amount of $3401.64, we will remand the cause for entry of judgment in favor of plaintiff in the sum of $3566.64. Alternatively, lacking such additur, the judgment in favor of plaintiff Dale Ross will be reversed and the cause remanded for a new trial on damages only.

Additur ordered, otherwise reversed and remanded for new trial on damages only.

CAMPBELL, P. J., and O'CONNOR, J., concur.